UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EILEEN LEMPICKI,

    Plaintiff,

v.                                                     Case No:   8:15-cv-1991-T-DNF

CAROLYN COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

## OPINION AND ORDER

Plaintiff, Eileen Lempicki, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

        **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

Case 8:15-cv-01991-DNF Document 20 Filed 02/21/17 Page 2 of 14 PageID 1497

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed applications for a period of disability, DIB and SSI in November 2012, alleging disability beginning April 16, 2011. (Tr. 225-40). Plaintiff's applications were denied. (Tr. 101-43). At Plaintiff's request, an administrative hearing was held before Administrative Law Judge Lawrence J. Neary ("the ALJ") on July 7, 2014. (Tr. 35-64). On November 5, 2014, the ALJ entered a decision finding Plaintiff had not been under a disability from April 16, 2011, through the date of the decision. (Tr. 13-34). Plaintiff requested review of the ALJ's decision and the Appeals Council denied Plaintiff's request on July 28, 2015. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) on August 26, 2015. The parties having filed memoranda setting forth their respective positions, this case is ripe for review.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 16, 2011, the alleged onset date. (Tr. 15). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease with back pain; seizure disorder; hypoglycemia; major depressive disorder; anxiety disorder, NOS; mood disorder; post-traumatic stress disorder; personality disorder; and history of opiate dependence, in remission. (Tr. 15). At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to no climbing of ladders, ropes, or scaffolds and all other postural activities are limited to occasional; is limited to no exposure to hazards such as machinery and heights; and is further limited to simple, routine, repetitive tasks, with only occasional changes in the works setting and only occasional interaction with the public and co-workers.

(Tr. 19). At step four, the ALJ found that Plaintiff was not capable of returning to her past relevant work as a fast food manager, nursing home cook, and cashier at a truck stop. (Tr. 25).

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 25-26). In reaching this decision, the ALJ relied on the testimony of a vocational expert who stated that an individual with Plaintiff's RFC could perform the jobs of bakery worker conveyor line, cleaner/housekeeper, and produce weigher. (Tr. 26). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from April 16, 2011, through the date of the decision, November 5, 2014. (Tr. 27).

**II.    Analysis**

Plaintiff raises a single issue on appeal: whether the ALJ properly evaluated the opinions of the treating and consulting physicians in this case. (Doc. 17 p. 19-25). Specifically, Plaintiff argues that the ALJ improperly evaluated the opinions of Plaintiff's treating physician, Paul Doghramji, M.D., and one-time consultative evaluator, Gregory Coleman, Psy.D.

The Court begins by reviewing the record as it pertains to Dr. Doghramji. The record shows that Plaintiff started seeing Dr. Paul Doghramji at Collegeville Family Practice on August

31, 2010. (Tr. 715). Dr. Doghramji noted Plaintiff's history of vulvar cancer, obstructive sleep apnea, and depression. (Tr. 715). Plaintiff presented with complaints of back pain. (Tr. 714). Plaintiff reported that she had had intermittent problems with her back over the years, but now the pain was severe. Any movement hurt, but lying down produced the least pain. (Tr. 715). On examination, her lumbar spine was tender on palpation with spasms of the paraspinal muscles. Bending especially elicited pain. Straight leg raising test was positive on the right leg at 30 degrees, and positive on the left at 90 degrees. (Tr. 716). Dr. Doghramji diagnosed lower back pain, insomnia, hypertension, sciatica, depression, obstructive sleep apnea, and vulvar neoplasm. (Tr. 716). He sent her for lumbar x-rays and MRI and prescribed hydrocodone-ibuprofen for the pain. (Tr. 717). Dr. Doghramji recorded that Plaintiff would likely need physical therapy. (Tr. 717). On September 9, 2010, Plaintiff underwent an MRI of her lumbar spine on orders from Dr. Doghramji. (Tr. 474). The MRI showed minimal disc desiccation at L3-L4. (Tr. 474).

On September 14, 2010, Plaintiff returned to Dr. Doghramji with complaints of her hands going numb. (Tr. 712). Plaintiff had just had the MRI, and said that since then, her right leg would go numb. (Tr. 712). On physical examination, Phalen's maneuver on her hands caused numbness/tingling in the median nerve distribution of both wrists. (Tr. 713). Dr. Doghramji added carpal tunnel syndrome to her diagnosis. He also changed her medication from hydrocodone to fentanyl patch and oxycodone. He referred her to physical therapy. (Tr. 713). He ordered rigid wrist splints for nighttime use. (Tr. 714).

On October 6, 2010, Plaintiff returned to Dr. Doghramji and complained that the fentanyl patch was not helping with her pain. (Tr. 709). She also complained of chest pain while walking. (Tr. 709). Dr. Doghramji sent her for a cardiology referral. (Tr. 711).

On November 9, 2010, Plaintiff stated to Dr. Doghramji that her medications were not helpful regarding her low back pain. (Tr. 706). She was going to see a weight doctor the next day. (Tr. 706). Dr. Doghramji stopped the oxycodone and wanted to try embeda, a "good morphine product" for which he had a coupon. Dr. Doghramji referred Plaintiff to an orthopedic doctor. (Tr. 708).

Plaintiff returned to Dr. Doghramji again on January 17, 2011. Dr. Doghramji stated that her medications had been working but seemed to be losing their potency. (Tr. 703). He increased her dose of Embeda from 30 mg to 60 mg daily. She was also taking Nucynta$_3$ for her back pain. (Tr. 705). On February 10, 2011, Plaintiff complained of drowsiness despite using CPAP machine for her obstructive sleep apnea. She was taking her medications but her back was more bothersome lately. (Tr. 700). On March 16, 2011, Plaintiff called Dr. Doghramji's office stating that she had a burning sensation and numbness in her left leg, which was getting worse. (Tr. 1305). Dr. Doghramji ordered prednisone, and indicated that he would refer her back to a specialist if the prednisone did not help. (Tr. 1306). Again, on April 6, 2011, Plaintiff complained that her pain medications were not working as well. (Tr. 697).

Plaintiff contacted Dr. Doghramji's office on January 2, 2012 to state that she was having a flare of her radicular pain in her legs. Dr. Doghramji added a NSAID to her pain regimen. (Tr. 302). She called again on January 4, 2012 about the numbness in her left leg. (Tr. 1300). Dr. Doghramji added gabapentin. (Tr. 1301).

On February 2, 2012, Plaintiff called Dr. Doghramji's office indicating that she was having a panic attack and her medications were not working. (Tr. 1294). Dr. Doghramji changed her medication for anxiety from alprazolam to clorazepate. (Tr. 1295). On March 12, 2012, she told him that her anxieties were no better. (Tr. 1292). Dr. Doghramji renewed the alprazolam and

added citalopram. (Tr. 1293). On April 16, 2012, she reported that her anxieties were still very high. (Tr. 1288). He temporarily increased her alprazolam. (Tr. 1289). Plaintiff called again on May 21, 2012. She was having panic attacks and crying again. (Tr. 1286). She was also having sleep problems. (Tr. 1286). Dr. Doghramji added abilify to her medications. (Tr. 1287). On May 28, 2012, she complained that the sleep medications made her sleep 15 hours. (Tr. 1284). He changed the sleep medication. (Tr. 1285). On June 19, 2012, she called again indicating her anxiety attacks were much worse and the medications were not helpful. (Tr. 1278). He increased the alprazolam. (Tr. 1279). She called again on June 26, 2012 complaining of being shaky and her blood sugar being too low. (Tr. 1276). She wanted a glucose meter and was advised that the insurance company would send one to her. (Tr. 1277).

On June 29, 2012, Plaintiff called Dr. Doghramji the next day stating that she had gone to the emergency room due to walking poorly the day before. She was told that it was a side effect of the nucynta. She had gotten a fentanyl patch at the hospital, but felt no better. (Tr. 1274). Dr. Doghramji advised her to stay off the nucynta until she could be seen. (Tr. 1275). Plaintiff called again on July 16, 2012 about her medications. She was having insomnia despite the medications. (Tr. 1272). She called on July 27, 2012 to say that the Opana was not helping her pain. (Tr. 1270).

On August 13, 2012, Plaintiff's sister called Dr. Doghramji about Plaintiff's medications. She said that Plaintiff seemed out of it, and was tired lately. (Tr. 1266). Dr. Doghramji suggested cutting back on the alprazolam and coming in for a medication review. (Tr. 1267).

On September 15, 2012, Plaintiff's sister called Dr. Doghramji to tell him that Plaintiff has suffered seizures that day. (Tr. 1260). On September 17, 2012, Plaintiff talked to Dr. Doghramji and told him that the hospital indicated that the seizure was from not eating properly and hypoglycemia. (Tr. 1258). He ordered her not to drive, and referred her to a neurologist. (Tr.

1259). He was still prescribing her pain and sleep medications, including nucynta, opana, and temazepan. He was tapering her down on the clonazapam. (Tr. 1258).

On December 12, 2012, Dr. Doghramji filled out a physical residual functional capacity questionnaire concerning Plaintiff's chronic back pain. (Tr. 1101). He noted that she had chronic back pain since 2009, and had 2 herniated lumbar discs, and siatica. Her prognosis was poor. (Tr. 1101). He stated that the findings supporting this were tender low back, decreased sensation in lumbar spine, DTR's unequal, and positive straight leg raising at 45 degrees on the left. (Tr. 1101). He stated that she used gabapentin for relieving symptoms, and also needed opana and nucynta. (Tr. 1101). He stated emotional factors also affected her functioning, including depression and anxiety, and psychological factors affecting physical condition. (Tr. 1102). He stated that her pain would constantly interfere with her ability to perform even simple tasks, and she was incapable of even a low stress job. (Tr. 1102). He stated she could sit, and stand/walk for less than two hours each. (Tr. 1103). She could not lift even ten pounds. (Tr. 1103). She would miss at least 4 days of work per month. (Tr. 1104).

On the same day, Dr. Doghramji also filled out a medical source statement concerning Plaintiff's mental problems. (Tr. 1107). He stated that Plaintiff suffered from generalized anxiety disorder, depression, and possible bipolar. He said that her treatment for those problems was celexa, seroquel, and abilify. He indicated that she had had a modest response to those medications. (Tr. 1107). He stated that the clinical findings backing up his opinion were her depressed mood, decreased (not readable), insomnia, mood swings, short temper, tearfulness, lack of energy, and trouble thinking. Her prognosis was fair to poor. (Tr. 1107). He said that she would be unable to remember work like procedures, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable


number and length of rest periods, ask simple questions or request assistance, deal with normal work stress, be aware of normal hazards and take appropriate precautions, set realistic goals, and use public transportation. (R.pp. 1109-1110). He opined that she had marked limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. (Tr. 1111).

On December 12, 2012, Dr. Doghramji filled out a form concerning Plaintiff's sleep problems. (Tr. 1117). She was diagnosed with sleep apnea, and her prognosis was good. (Tr. 1117). She was also taking morphine in the form of opana and nucynta which caused drowsiness and sedation. (Tr. 1118). She was unable to drive due to excessive daytime sleepiness and loss of consciousness. (Tr. 1120).

Plaintiff called Dr. Doghramji on December 21, 2012 concerning medications that he had given her for asthma that were not working. (Tr. 1221). Plaintiff saw Dr. Doghramji again on May 29, 2013, complaining of severe hip pain and sleep problems. (Tr. 1364). She was taking methadone for her pain, but had run out the week before and it didn't make a difference. (Tr. 1364). He added lyrica and nuvigil to her medications. (Tr. 1367).

In his decision, after reviewing the medical evidence of record, the ALJ addressed the opinions offered by Dr. Doghramji as follows:

> The undersigned has further considered the multiple opinions of Dr. Doghramji, who provided the opinion that the claimant is unable to lift and carry; could sit, stand and/or walk for less than two hours; could never perform postural maneuvers; and was unable to perform or has marked limitations in her ability to perform mental work-related activities (Exhibits B32F, B33F and B35F). These opinions are inconsistent with the objective medical findings, as discussed above, including Dr. Doghramji's own examinations (Exhibit B17F and B37F).

(Tr. 24).

Plaintiff argues that the ALJ erred in evaluating Dr. Doghramji's opinions because the reasons the ALJ gave for rejecting the opinions was not clear. (Doc. 17 p. 20). Plaintiff notes that the ALJ never stated the weight he gave Dr. Doghramji's opinions nor identified what evidence, in the record as a whole or in Dr. Doghramji's records, is inconsistent with the opinions proffered by Dr. Doghramji. (Doc. 17 p. 20-21). Plaintiff contends that contrary to the ALJ's finding, Dr. Doghramji's opinions as to Plaintiff's physical and mental limitations are consistent with and supported by his own records as well as the record as a whole. (Doc. 17 p. 21-24). In response, Defendant contends that substantial evidence supports the ALJ's decision that Dr. Doghramji's opinions regarding Plaintiff's physical and mental limitations were inconsistent with both the objective evidence and Dr. Doghramji's own examinations of Plaintiff. (Doc. 18 p. 7-18).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the

contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

In this case, the Court begins by rejecting the argument that remand is necessary due to the ALJ's failure to specify the "weight" given to Dr. Doghramji's opinions. An ALJ is not required to use particular phrases or formulations as long as the court can determine what statutory and regulatory requirements the ALJ applied. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987). Although the ALJ did not state that he gave "little" or "no" weight to Dr. Doghramji's opinions, given the ALJ's finding that the opinions were inconsistent with the record, it is clear from the ALJ's decision that the opinions were discounted, at least to the extent that they are in disagreement with the ALJ's RFC finding. For this reason, the Court finds that any error the ALJ may have committed in failing to specifically state the weight given to Dr. Dogramhji's opinions was harmless. *See Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) ("When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand."); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2004) ("Although the ALJ did not explicitly state what weight he afforded the opinions of [several physicians], none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless.").

While it was harmless error for the ALJ to not specifically state the "weight" accorded Dr. Doghramji's opinion, the Court agrees with Plaintiff that the ALJ's explanation for his rejection of Dr. Doghramji's opinion was impermissibly vague. In rejecting Dr. Doghramji's


opinions, the ALJ did not identify *how* the medical evidence of record or Dr. Doghramji's treatment notes were inconsistent with his opinions. Defendant contends that the ALJ's finding is supported by his statement that Dr. Doghramji's opinion was inconsistent with the evidence "discussed above," i.e., the ALJ's summarization of the medical evidence in the preceding section. (Doc. 18 p. 6; Tr. 24). This vague statement, without specific references to the evidence that is inconsistent, frustrates review and runs afoul of *Winschel*'s directive for the ALJ to state with particularity his reasons for assigning whatever weight he deems appropriate to the opinions of record. *See Moliere v. Colvin*, 2016 WL 5110507 at *4 (M.D. Fla. Sept. 21, 2016) (collecting cases). Reviewing the ALJ's summarization of the medical evidence and Dr. Doghramji's opinion, it is not obviously clear to the Court how this evidence is inconsistent with Dr. Doghramji's opinions. This ambiguity is not made any clearer, as Defendant claims, by the ALJ citing to two exhibits (i.e., "B17F" and "B37F") as examples of the record undermining Dr. Doghramji's opinion. Exhibit B17F and B37F are treatment notes from Dr. Doghramji's office and are over 100 pages and 200 pages in length, respectively. Citing generally to these lengthy exhibits does not make the ALJ's decision any clearer.

In her brief, Defendant reviews the evidence attempting to demonstrate that substantial evidence supports the ALJ's finding that Dr. Doghramji's opinion was inconsistent with the medical record and his own treatment notes. The Court, however, will not engage in such a *post hoc* analysis. The Eleventh Circuit has stated that "a court may not accept appellate counsel's *post hoc* rationalizations for agency actions," and "[i]f an action is to be upheld, it must be upheld on the same bases articulated in the agency's order." *Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010) (citing *FPC v. Texaco Inc.*, 417 U.S. 380, 397, 94 S.Ct. 2315, 2326,

41 L.Ed. 141 (1974)).  On remand, the ALJ shall state the weight he accorded the opinions of Dr. Doghramji and explain with particularity his reasons therefor.

As Dr. Coleman's opinion, the Court finds no error in the ALJ's decision to accord it little weight.  As a one-time examining physician, Dr. Coleman's opinion was entitled to no deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).  Unlike in his analysis of Dr. Doghramji's opinion, the ALJ stated that he was according little weight to Dr. Coleman's opinion.  The ALJ explained his reasoning with specific citations to the record to show that Dr. Coleman's opinion was inconsistent with the record.  The Court therefore affirms the ALJ's treatment of Dr. Coleman's opinion.

### III. Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 21, 2017.

*[signature]*

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties